91  625
94  481

91  625
124  465

CASE 113—RULE—JUNE 20.

# Kentucky and Indiana Bridge Company v. Krieger, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE VIOLATION OF AN INJUNCTION PENDING AN APPEAL from a judgment perpetuating the injunction is a contempt of the appellate court, and punishable as such.

2. AN APPEAL WITH SUPERSEDEAS FROM A JUDGMENT PERPETUATING AN INJUNCTION does not have the effect to dissolve or suspend the injunction.

3. A COMMON CARRIER CAN NOT EXCUSE ITS VIOLATION OF AN INJUNCTION upon the ground that its imperative duty to the public demanded such violation.

4. INJUNCTION VIOLATED.—The defendant having been enjoined from laying a railroad track in front of plaintiff's property, the laying of a .rack by a company other than defendant must be regarded as the act of defendant, as the defendant's president, when the persons laying the track were threatened with prosecutions by the city, informed the city attorney in writing that the track was being constructed in pursuance of an ordinance of the city council granting the right to defendant. Besides, as the track complained of would be useless without

Vol. 91—40.

Kentucky and Indiana Bridge Company v. Krieger, &c.

a connection with defendant's track, and defendant must be regarded as having consented to and caused such connection, it is guilty of a violation of the injunction.

THOMAS W. BULLITT FOR APPELLANT.

1. No violation of any order of injunction, and, therefore, no contempt, is shown to have been committed by appellant.
2. If any violation of a valid order is shown, it was not violent or contemptuous in fact, but has occurred because practically impossible to avoid it, except by the failure of appellant to perform *a plain imperative duty to the public*. A strict observance of the order in the sense contended for by appellee would involve not only a violation of such public duty, but would be in plain violation of established principles of law. (Fulton v. Short Route Transfer Co., 85 Ky., 652-4; L. & O. R. Co. v. Applegate, 8 Dana, 289; Wolf v. C. & L. R. Co., 15 B. M., 409; L. & F. R. Co. v. Brown, 17 B. M., 772; N. & C. B. Co. v. Foote, 9 Bush, 264; Cosby v. O. & R. R. Co., 10 Bush, 288; E., L. & B. S. R. Co. v. Combs, 10 Bush, 382; J., M. & I. R. Co. v. Esterle, 13 Bush, 675.)

Therefore, if any violation is found to exist, a nominal penalty only should be inflicted.
3. The motion to modify should be granted if within the jurisdiction of this court, and, if not, a decision of this motion should be deferred until the decision of the appeal.

HELM & BRUCE FOR APPELLEES.

1. The supersedeas of the judgment perpetuating the injunction does not have the effect to suspend the injunction. (Smith v. Western Union Tel. Co., 83 Ky., 270.)
2. The contempt offered is to this court, and the court is asked to require the original status under the preliminary injunction to be restored by having all the tracks torn up, and the street put in proper condition for travel.
3. The appellant will not be allowed, after having been restrained from doing a thing which it wanted to do, to farm out this privilege, peculiarly personal in its nature, to another corporation operating under a contract with it, and thus secure for its own benefit the doing of the thing it was prohibited from doing.
4. A party so flagrantly in contempt as this record shows the appellant to be has no right to have his appeal considered until he has completely purged himself of the contempt. (Daniell's Chancery Practice, 5th edition, volume 1, star page 505.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

As appears from his petition filed November 4, 1886,

and is otherwise shown, the plaintiff, now appellee, Jacob Krieger, owns a lot of land in the city of Louisville, described as follows: Beginning at a point in the north line of Duncan street 105 feet east of Fifteenth; thence north parallel with the latter 153 feet to south line of Portland avenue; with that line east 98 feet to the line of a lot owned by the Louisville, New Albany and Chicago Railroad Company; with it south 96 feet to Duncan street, and thence west to the beginning.

It further appears that he has upon that lot a hominy mill and grain elevator, through the center of which is a way from Duncan street to Portland avenue for wagons to pass; but not being wide enough for them to be turned around within the building, they necessarily pass from one street to the other.

It was, in substance, alleged in the petition that the defendant, now appellant, the Kentucky and Indiana Bridge Company, had threatened, and unless immediately restrained would construct a railway track along Portland avenue in front of and around the plaintiff's property, making a curve nearly opposite the entrance thereof, whereby he would be deprived of reasonable use of the street in connection with the business for which the buildings were erected and adapted, and his property greatly injured and lessened in value. An injunction, as prayed for, was granted by the chancellor, restraining the defendant tearing up Portland avenue, or laying any track thereon between Fourteenth and Fifteenth streets until further order of court.

November 9, 1886, an answer was filed, in which was a denial that defendant had threatened or intended to

lay or construct a railway around plaintiff's property,
or that the railway which it proposed to construct
would make a curve in front of the entrance into his
property.    It was stated in the answer substantially
that defendant is a corporation authorized by its char-
ter to construct a railroad bridge across Ohio river
between Louisville and New Albany, and a railroad
track or tracks so as to connect its bridge with
railroads and depots in Louisville; and that it was
empowered by an ordinance of the General Council
of said city to lay down a single or double railroad
track on Portland avenue in front of plaintiff's prop-
erty for the purpose of connecting its bridge with the
tracks entering the freight yard of the Louisville, New
Albany and Chicago Railroad, and also with tracks
entering yard and depots of the Ohio and Mississippi
Railroad Company, and other railroad tracks in Four-
teenth street; that its connection with the tracks men-
tioned will be made at points *east* of and *nearer* to
Fourteenth street than the property of plaintiff; that
its track, whether single or double, will be laid in con-
formity to the grade of Portland avenue, and in such
manner as not to offer any obstruction to use of the
street in front of said lot at all, and so wagons can
cross the same and use the street without difficulty;
that said track in front of plaintiff's lot will be used
comparatively a very small portion of each day, and,
not being designed for use of standing trains, they
will not, unless in case of unavoidable accident, stop
or stand in front of said lot, but pass immediately
beyond the same, causing obstruction in the street not
more than a few minutes at a time.    It was further

stated that the defendant, while desiring to lay a double track in said street, was willing, until the final hearing of the case, to lay and use only a single track railroad in the center of Portland avenue, if so required by the court.

November 23, 1886, the defendant made, in open court, a motion for modification of the injunction so far as not to forbid laying a single track railroad in Portland avenue, the whole question involved in the injunction to be reserved for final action; and November 26 an order was made modifying the injunction to the extent of permitting defendant to lay a single track railway along and in center of Portland avenue in front of plaintiff's property in the manner prescribed in the order, and upon the condition that freight trains shall not be run in front of plaintiff's property more than twice for and by each company using said track during business hours of the day. June 24, 1887, upon final hearing, judgment was rendered to the effect that the temporary injunction as modified be perpetuated. But a motion for new trial having been made, was, January 11, 1888, sustained, and judgment at the same time rendered of same effect as that of June 14, 1887, except right was given to defendant to apply for further modification of the injunction thereby made perpetual, when it should thereafter appear, upon other proof of facts arising, that such further modification is proper.

May 4, 1888, defendant moved the court to modify the judgment of January 11 by striking out the condition that freight trains shall not be run in front of plaintiff's property more than twice for and by each

railroad company using said track during the business hours of the day; and proof having been taken on the motion, the court, October 24, 1888, overruled it.

This appeal was granted from the two judgments mentioned and the transcript filed November 22, 1888, and, upon being called, was, March 9, 1889, continued for oral argument; but September 10, 1889, before it was reached for argument, appellee moved this court for a rule returnable on September 26, 1889, against appellant to show cause why it shall not be compelled to restore Portland avenue in front of appellee's property to the same condition it was in prior to the time that any railroad track was laid thereon; and further, to show cause why it shall not be otherwise punished for contempt in disobeying the order of injunction herein.

A response to the rule was filed September 26, and at the same time a motion was made for this court to modify the judgment of January 11, 1888, by striking from it the condition as to the number of freight trains to be run during business hours of each day. Subsequently the case was argued orally and briefs filed, and submitted on the merits as well as on the motion; but properly the motion by appellee must be first considered.

It is stated in affidavits of appellee and others, upon which the motion is based, that on Saturday evening, July 30, 1889, and the succeeding Sunday and Sunday night, appellant tore up Portland avenue in front of appellee's property, and then constructed double tracks of railroad, one of the tracks being curved around the property and within a few feet

of the curb fronting it.   It is also stated that since the appeal was taken to this court a much greater number of trains have daily passed in front of said property than allowed by the judgment appealed from, and that empty trains have been switched back and forth almost continuously during each day ; those belonging to one company, the Ohio and Mississippi, being thus run as often as fifteen times daily.

As violation of the injunction in both respects mentioned is substantially admitted in the response, the simple inquiry is, whether the excuse or justification presented is sufficient to permit this court to overrule the motion of appellee.

That the issue between the parties and the rights and duties of appellant as determined and defined by the judgment of the chancellor might be clearly understood, we have referred at some length to the pleadings and steps taken in the case in the lower court, and it is thereby rendered too plain to be misunderstood, even if the judgment was not, though it is, full and explicit, that no right was asked by appellant, nor given to it by the chancellor, to construct any other than a single track in the centre of Portland avenue, opposite to the lot of appellee; and it was stated by appellee in its answer that no switch track was desired or asked near thereto, but that connection with the yards of the two companies using appellant's bridge, to wit: The Ohio and Mississippi and Louisville, New Albany and Chicago, would be made east of his lot and near to Fourteenth street. The construction, in July, 1889, of a switch track with appellant's road in Portland avenue, in front of

appellee's lot, whereby a double track was necessitated and made, must, therefore, be treated as a deliberate violation and disregard of the judgment of the chancellor, and, occurring while the appeal therefrom was pending, must be treated as a contempt and defiance of this court.

It is, however, stated in the response that the connecting track complained of between the track of appellant and the freight yard of the Louisville, New Albany and Chicago Railroad Company was not laid, nor has it been operated by appellant, nor been at any time in its possession or under its control, but was laid and operated by the Louisville, New Albany and Chicago Railroad Company, which is not a party to this action.

It appears that when the street was being torn up in July, 1889, the Louisville, New Albany and Chicago Railroad Company had no authority from the general council of Louisville to construct a track on Portland avenue, and those engaged in tearing up the street for such purpose, if in the service of that company, were liable to arrest and punishment therefor; but when applied to by appellee to cause arrests made, the city attorney declined to do so, because Moore,. president of appellant, the same person who made and swore to the response under consideration, informed the city attorney in writing the track in question was being constructed in pursuance of an ordinance of the city council granting the right to appellant. In view of that fact, there can be no question of appellant, by its officers, aiding, and in fact causing, the track to be constructed. Besides,

it would be useless without a connection with appellant's track in Portland avenue, which it must have consented to and caused. The reason given in the response, and also urged in counsel's brief, why appellant should not be made to answer to this court for contempt is, that the judgment appealed from was, prior to issuing the rule in this court, superseded. If such position was tenable, it would result that however flagrant and indefensible invasion of the rights of a citizen might be contemplated by another, all he need do to remove the obstacle in the form of an injunction, in the way of his doing the irreparable injury, would be to pray an appeal and execute a supersedeas bond. This court has expressly held a supersedeas has no such effect. (Smith, &c., v. Western Union Telegraph Company, 83 Ky., 269.)

The further argument that violation of the injunction in the manner mentioned should be overlooked by this court because it was practically impossible to avoid it, except by failure of appellant to perform a plain imperative duty to the public, amounts to no less than defiance of all judicial authority; for it is equivalent to an assumption that a railroad corporation, because performing for its own profit a *quasi* public duty, may determine for itself what are its relative rights and duties, and at its pleasure and in its own way exercise them, though contrary to a judgment just rendered that has defined and fixed them. And such violation occurring while appeal from that judgment is pending, must be treated as especially in contempt and defiance of this court, because the lower court, for the time, has no power to enforce obedience to its judgment.

We think regard for the law, the rights of appellee
that have been invaded, and the dignity and author-
ity of this court, require the conduct of appellant to
be treated as contempt, and dealt with accordingly.
The motion of appellant to modify. the injunction so
as to condone its violation of that part of the judg-
ment limiting the number of trains that may, during
business hours, pass the property of appellee is, for .
obvious reasons, overruled.   But the rule against ap-
pellant is now made absolute, and the track laid in
July, 1889, connecting in front of appellee's property
with the single track permitted by the judgment to
be laid along the centre of Portland avenue, is hereby
ordered to be taken up, removed, and the street re-
stored to the condition it was in previously; and if
it is not made to appear by the first day of the next
term of this court the track mentioned has been taken
up and removed, the appeal in this case will be dis-
missed, and such other orders made and enforced as
may be then deemed proper.